UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRK JA'ONG BOUIE, JR., | No. 2:16-cv-0624 JAM AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| R. WILLOX, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are defendants' motion for summary judgment (ECF No. 29) and plaintiff's motions to strike (ECF No. 34), to compel (ECF No. 54), and for extension of time (ECF No. 56).

I.  Procedural History

This case proceeds on the first amended complaint. ECF No. 17. Prior to the close of discovery, defendants filed a motion for summary judgment on the ground that plaintiff had failed to exhaust his administrative remedies. ECF No. 29. Plaintiff opposes the motion (ECF No. 32) and moves to strike defendants' reply (ECF No. 34).

Although the deadline for merit-based summary-judgment motions was vacated pending resolution of defendants' exhaustion motion (ECF No. 45), the parties continued with discovery and plaintiff has filed a motion to compel which is also pending (ECF No. 54).

II.     Plaintiff's Allegations

Plaintiff alleges that defendants Willox and Fielder conspired to retaliate and did in fact retaliate against him for pursing a habeas petition. ECF No. 17 at 16-21. Specifically, he claims that after he attempted to exercise his right to pursue a habeas petition, Willox made false allegations against him for the purpose of confiscating the funds in his trust account, and that Fielder threatened to have him transferred if he kept pursuing the issue of his funds and then had him transferred to a less desirable prison. Id. at 18-21. Defendants' conduct was the product of a conspiracy between the two to retaliate against plaintiff for exercising his rights to pursue a habeas petition and file grievances. Id. at 16-17.

III.    Motion for Summary Judgment

A.      Defendants' Arguments

Defendants argue that the complaint should be dismissed because plaintiff did not exhaust his administrative remedies prior to bringing this lawsuit. ECF No. 29-2.

B.      Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations

1   and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a

2   standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

3   at 1364 n.4 (citation omitted).

4       The court is mindful of the Ninth Circuit's more overarching caution in this context, as

5   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

6   *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

7   611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

8   entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

9   only those assertions in the opposition which have evidentiary support in the record will be

10  considered.

11      Plaintiff argues that administrative remedies were unavailable to him.  Specifically, his

12  grievance regarding the confiscation of his funds was improperly rejected because he was

13  required to attach a copy of the order authorizing the seizure of his property when no such order

14  existed.  ECF No. 32 at 3-4.  He further claims that the motion should be denied because the

15  grievances attached to the motion for summary judgment are irrelevant and the grievance history

16  produced by defendants does not show every appeal he filed.  Id. at 4-5.

17          C.    Defendants' Reply and Plaintiff's Motion to Strike

18      In reply to the opposition, defendants argue that plaintiff's appeal was not improperly

19  rejected because (1) plaintiff failed to comply with instructions to cure deficiencies, and (2) had

20  plaintiff requested a copy of the seizure order, one would have been provided.  ECF No. 33 at 2-

21  3.  Defendants attach a declaration from Willox that includes a copy of the order and avers he

22  would have provided plaintiff with a copy if asked.  ECF No. 33-1.

23      Plaintiff moves to strike defendants' reply in support of their motion for summary

24  judgment on the grounds that the copy of the order for seizure of property attached to Willox's

25  declaration is falsified and that Willox's declaration purporting to authenticate the document is

26  knowingly false because the order is fake.  ECF No. 34 at 1-4.  He argues that the order must be

27  falsified because it does not show that it was filed by the court, does not have a case number, and

28  the judge's signature is illegible.  Id. at 2.  He further argues that the order must be false because

1  forfeiture proceedings require a criminal proceeding to go forward and no criminal proceedings
2  were ever brought against him. Id. at 3.

3  Contrary to plaintiff's belief, California Health and Safety Code Section 11471, under
4  which the seizure order was issued, does not require criminal proceedings be pending at the time
5  a seizure order is issued. Seizure can be ordered where there is probable cause to believe that the
6  "property was used or is intended to be used in violation of [Division 10 of the Health and Safety
7  Code]," Cal. Health & Safety Code § 11471(d), which is the ground relied upon for issuance of
8  the order in this case, ECF No. 33-1 at 5. Willox's declaration is also sufficient to authenticate
9  the seizure order, and plaintiff's claims that it is fake due to perceived deficiencies are inadequate
10 to overcome defendant's declaration. Furthermore, even without a copy of the order, Willox's
11 sworn statement that he would have provided plaintiff with a copy of the seizure order if asked is
12 sufficient to establish that fact, and plaintiff makes no claim that he ever requested a copy of the
13 order and was denied. Accordingly, plaintiff's motion to strike defendants' reply will be denied.

14           D.       Legal Standards for Summary Judgment

15 Summary judgment is appropriate when the moving party "shows that there is no genuine
16 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
17 Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden
18 of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627
19 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The
20 moving party may accomplish this by "citing to particular parts of materials in the record,
21 including depositions, documents, electronically stored information, affidavits or declarations,
22 stipulations (including those made for purposes of the motion only), admissions, interrogatory
23 answers, or other materials" or by showing that such materials "do not establish the absence or
24 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
25 support the fact." Fed. R. Civ. P. 56(c)(1).

26 "Where the non-moving party bears the burden of proof at trial, the moving party need
27 only prove that there is an absence of evidence to support the non-moving party's case." Oracle
28 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 29-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

> E. Exhaustion
>> i. Legal Standards for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones, 549 U.S. at 204, 216.  "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v.

Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original) (citation omitted). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857 (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v.

7

1  Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by
2  Albino, 747 F.3d at 1168-69.

### ii. California Regulations Governing Exhaustion of Administrative Remedies

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" Marella, 568 F.3d at 1027 (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. At the time relevant to the complaint, California regulations allowed a prisoner to "appeal" any action or inaction by prison staff that had "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2014). The appeal process was initiated by the inmate's filing a "Form 602" the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id., § 3084.2(a). The grievance system had three levels of review and was exhausted by obtaining a decision at the third level. Id., § 3084.1(b).

Each prison was required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Id., § 3084.5(b). The appeals coordinator could refuse to accept an appeal and did so either by "rejecting" or "canceling" it. Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.").

An appeal could be rejected because, among other things, it was "missing necessary supporting documents" or the inmate "submitted the appeal for processing at an inappropriate level bypassing required lower level(s) of review." Id., § 3084.6(b)(7), (15). A rejected appeal could "later be accepted if the reason noted for the rejection [was] corrected and the appeal [was] returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection." Id., § 3084.6(a)(2).

According to the regulations, "a cancellation or rejection decision [did] not exhaust administrative remedies." Id., § 3084.1(b). Outside of any exceptions outlined in the regulations, "all appeals [were] subject to a third level of review, as described in section 3084.7, before administrative remedies [were] deemed exhausted." Id.

8

      F.      <u>Undisputed Material Facts</u>

Plaintiff did not respond to defendants' statement of undisputed facts and the facts are therefore deemed undisputed except as otherwise discussed.

At all times relevant to the complaint, plaintiff was an inmate incarcerated at Deuel Vocational Institution (DVI) and defendants were employed at that institution. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 29-3) ¶¶ 1, 5. The conduct at issue in this case began on August 20, 2013, DSUF ¶ 3, and plaintiff filed the original complaint in this action on March 18, 2016,[1] ECF No. 1 at 46.

During the time plaintiff was at DVI, there was an administrative remedies process in place. DSUF ¶ 6. From August 2013 until the initiation of this action, plaintiff had two appeals accepted and adjudicated at the third level. DSUF ¶ 7. Neither appeal dealt with the allegations that form the basis of this action. DSUF ¶¶ 8-9.

On January 20, 2014, plaintiff filed an inmate appeal against Willox for the illegal seizure of his trust account. ECF No. 17 at 15, ¶ 49.[2] On February 25, 2014, plaintiff received a second-level response that indicated his appeal had initially been accepted but was being rejected because he failed to attach a copy of the seizure order issued by the court. Id., ¶ 50. He proceeded to file his rejected appeal at the third level on March 3, 2014, with an explanation that the lower level decision was flawed and his appeal should not have been rejected. Id., ¶ 51. Plaintiff received the response rejecting his third-level appeal on April 25, 2014, at which point he believed that he had exhausted his administrative remedies. Id., ¶¶ 52-53.

////

---

[1] Defendants state that the complaint was filed on March 24, 2016. DSUF ¶ 2. However, this date does not reflect application of the prison mailbox rule. <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

[2] The declaration provided in support of defendants' motion for summary judgment acknowledges that prior to August 1, 2014, the Office of Appeals did not maintain copies of screened-out appeals, ECF No. 29-4 at 3, ¶ 6, and defendants have offered no evidence contradicting plaintiff's version of events. Accordingly, the court presumes for purposes of this motion that plaintiff's allegations regarding his attempts to pursue Appeal No. DVI-14-00322/HDSP-14-00298 are undisputed.

G.     Discussion

Defendants set forth properly supported facts showing that there was a grievance system available, that plaintiff was capable of utilizing the process, and that he did not file a third-level appeal addressing his claims against defendants. DSUF ¶¶ 6-9. With this evidence, defendants have met their burden of raising and proving the absence of exhaustion. Albino, 747 F.3d at 1172 ("[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."). The burden now shifts to plaintiff to show that he did not exhaust because administrative remedies were unavailable. Id.

Plaintiff does not dispute that an administrative remedies process existed at DVI or that he was able to utilize that process in general. Nor does he dispute the fact that between August 2013 and the initiation of this lawsuit, only two of his appeals were accepted at the third level of review. Instead, plaintiff argues that the appeals process was unavailable to him because his appeal regarding the claims in this case was improperly rejected. ECF No. 32 at 3-4.

As an initial matter, plaintiff argues that the appeals history provided by defendants does not list all the appeals he submitted during the relevant period and therefore does not prove lack of exhaustion. Id. at 5. However, while plaintiff claims that there are appeals missing from the list provided, he identifies only one appeal, Appeal No. DVI-14-00322/HDSP-14-00298,[3] as addressing the issues currently before the court. Id. Since plaintiff does not claim that any of the missing appeals related to his allegations against Willox and Fielder, the fact that they are not included on the list is immaterial.

With respect to Appeal No. DVI-14-00322/HDSP-14-00298, plaintiff argues that this appeal would have exhausted his claims against Willox and Fielder, but it was improperly rejected at both the second and third levels of review. Id. at 3-4. In support of this contention, he attaches copies of the rejection notices (id. at 7, 9); while neither party includes a copy of the appeal itself as part of the briefing on the summary-judgment motion, a copy is attached to

---

[3] Plaintiff also appears to claim that Appeal No. DVI-14-00322/HDSP-14-00298 was not included in the grievance history. ECF No. 32 at 5. However, that appeal is clearly listed as a screened-out appeal. ECF No. 29-4 at 6.

10

plaintiff's original complaint[4] (ECF No. 1 at 33-36).  The appeal claims that Willox illegally seized plaintiff's inmate trust account even though an investigation had already cleared plaintiff of wrong-doing, and that the seizure was in retaliation for appealing the previous investigation. Id.  With regard to Fielder, it states only that Fielder told plaintiff that his funds were being held due to an investigation.  Id. at 35.

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010).  In this instance, plaintiff's statement that Fielder advised him his funds were being held due to an investigation does nothing to put the prison on notice of the claim that Willox and Fielder conspired to retaliate against plaintiff by seizing his funds, and there are no allegations that Fielder threatened to or in fact did have plaintiff transferred in retaliation for filing an appeal. Plaintiff's argument that he should be excused from including all of his issues in the appeal because he had only limited space and would have risked rejection of his appeal had he exceeded the space limitations (ECF No. 32 at 5) has no basis in law.  Plaintiff does not identify, and the court is not aware of, any exception that would find or excuse exhaustion when plaintiff failed to include or bring as a separate appeal his retaliation claim against Fielder and his conspiracy claim against both defendants.  The appeal is therefore insufficient to exhaust these claims and they should be dismissed.

With respect to the retaliation claim against Willox, while the appeal provides a different motivation for the confiscation of funds from that alleged in the complaint, it is sufficient to put the prison on notice that plaintiff was claiming retaliatory confiscation of his funds.  Therefore, the question as to that claim becomes whether the rejection of the appeal was improper and therefore excused plaintiff from exhausting the appeal.

The rejection notices attached to plaintiff's opposition show that his appeal was rejected at the second level because he did not include a copy of the seizure order (ECF No. 32 at 9) and at the third level because he improperly bypassed the lower level of review (id. at 7).  Both notices

---

[4] It appears plaintiff also attempted to attach a copy to his amended complaint, but two pages are missing.  ECF No. 17 at 45-46.

advised that a rejected appeal could be resubmitted if plaintiff corrected the identified defect. Id. at 7, 9. Plaintiff argues that the rejections were improper because a seizure order did not exist, making it impossible to correct the defect. Id. at 3-4. This argument is consistent with the allegations contained in both the original and amended complaints wherein plaintiff also argues that the grievance process was inadequate and he was entitled to proceed to the third level of appeal because resubmission of his appeal at the second-level would have been futile without a copy of the non-existent order. ECF No. 1 at 13-15; ECF No. 17 at 15.

In response to plaintiff's arguments, defendants provide evidence that a seizure order existed, and that plaintiff would have been provided a copy had he requested one, demonstrating that the defect was in fact curable. ECF No. 33. Plaintiff responded to the evidence by moving to strike it on the ground that the order was falsified, and he reiterated his belief that no such order existed. ECF No. 34. However, as addressed above, plaintiff's conclusory assertions that the order is fake are insufficient. Furthermore, at no time has plaintiff alleged that he was told that a seizure order did not exist or that he asked for a copy of the order only to be denied.

There is no indication that plaintiff's appeal would have continued to be rejected had he followed instructions and attached a copy of the seizure order, nor is there any evidence or allegation that plaintiff was told the order did not exist or that he asked for a copy and was denied. Despite plaintiff's attempt to paint it otherwise, this is not a case where plaintiff was informed that the appeals process was unavailable, see Marella, 568 F.3d at 1027 (holding district court erred in dismissing case for failure to exhaust where plaintiff was informed appeals process was not available to him), nor is it a case where he took reasonable steps to obtain an ultimately unattainable document that he was told was necessary to proceed, see Nunez v. Duncan, 591 F.3d 1217, 1225 (9th Cir. 2010) (exhaustion excused where plaintiff "timely took reasonable and appropriate steps" to obtain copy of policy warden erroneously told him was required and that was not obtainable). Instead, by plaintiff's own account, he simply assumed that the order did not exist and therefore did not take any steps to verify its existence or attempt to obtain a copy. On these facts, the court cannot find that plaintiff was excused from exhausting his administrative remedies because they were unavailable.

H. Conclusion

For the reasons addressed above, plaintiff failed to exhaust his administrative remedies and defendants' motion for summary judgment should be granted.

IV. Motion to Compel

In light of the recommendation that the motion for summary judgment be granted and the case dismissed, the motion to compel will be denied.[5] In the event the District Judge does not adopt the findings and recommendations, plaintiff may renew the motion. Because the motion to compel is being denied, plaintiff's motion for an extension of time to file a reply will be denied as moot.

V. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be granted and this case dismissed because you did not exhaust your grievance at the third-level before starting this case and you have not shown that you were prevented from exhausting.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to strike (ECF No. 34) is denied.

2. Plaintiff's motion to compel (ECF No. 54) is denied without prejudice to renewal in the event these findings and recommendations are not adopted.

3. Plaintiff's motion for an extension of time (ECF No. 56) is denied as moot.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (ECF No. 29) be granted and the complaint be dismissed for failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

---

[5] The motion to compel does not seek discovery related to the exhaustion of administrative remedies and therefore does not need to be resolved prior to resolution of the pending motion for summary judgment.

objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 2, 2020

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE